[L.A. No. 31041. June 15, 1979.]

FIDEL CERVANTEZ, Plaintiff and Appellant, v.
J. C. PENNEY COMPANY, INC., et al., Defendants and Respondents.

**COUNSEL**

Larry L. Curran for Plaintiff and Appellant.

Jacobs, Jacobs & Witmer, R. M. Jacobs and Hugh G. Jacobs for Defendants and Respondents.

## OPINION

MANUEL, J.—Plaintiff Fidel Cervantez appeals from a judgment for defendants J. C. Penney Company, Inc., and Dennis R. Dahlke in an action for damages for false arrest and imprisonment, malicious prosecution, assault and battery, intentional infliction of emotional distress and negligence. At the close of plaintiff's case in chief, the trial court granted defendants' motion for nonsuit as to the causes of action for intentional infliction of emotional distress and negligence. The jury returned a general verdict in favor of defendants on the remaining causes of action.

Plaintiff's primary contention is that the court erred in instructing the jury on the standards for determining the lawfulness of his arrest. He also contends that the court erred in granting the motion for nonsuit on the causes of action for intentional infliction of emotional distress and negligence, that the court improperly instructed the jury in numerous particulars, that the court erred in refusing certain evidence, and that the evidence does not support the verdict.

On May 16, 1971, the day of the arrest giving rise to this lawsuit, defendant Dahlke, an off-duty police officer, was working as a security guard at the J. C. Penney store in Huntington Beach. Dahlke, who was not wearing a uniform, noticed plaintiff and his companion, Alexander Garcia, walk into the store. Because of their behavior and appearance, Dahlke suspected they might be part of a Mexican-American theft ring that he had heard was operating in Orange County stores. Dahlke testified that the two men seemed nervous and looked around as they entered the store but did not seem to be looking for anything in particular. He also testified that plaintiff was wearing an open, long-sleeved, untucked shirt similar to the mode of dress of a narcotics addict.

Dahlke followed the two men through the store and observed them move from department to department picking up and replacing various items while looking from side to side and behind them in a nervous manner. He observed Garcia make a purchase in the camera department. They ultimately arrived in the hardware department on the third floor where Dahlke observed plaintiff pick up and put down several items but retain what appeared to be a pair of pliers or wirecutters and hand them to Garcia. Garcia took them along with the other items he had picked up into a small metal shed on display. Plaintiff helped Garcia slide the door almost shut and then paced nervously in front of the shed. Dahlke

observed Garcia bend over in the shed and then emerge from it carrying two bags, one of which Dahlke had not previously noticed.

After the two men went to the escalator, Dahlke quickly checked the shed, found no merchandise and caught up with the pair while they were still on the escalator. The surveillance continued until plaintiff and Garcia left the store. Dahlke then stopped them, identified himself as "a police officer working security for Penney's" and asked to see their identification. Garcia was carrying two bags, an unstapled Montgomery Ward's bag and a Penney's bag with a receipt stapled on the top. Dahlke looked into the Ward's bag and saw various items with a Penney's label on them.

Edward Ruddy, another security guard who had joined Dahlke in his surveillance on the third floor, corroborated Dahlke's testimony as to the stop and the items found in the Ward's bag. Ruddy said he saw no receipts in the bag.

Plaintiff denied that he or Garcia, who was his brother-in-law, stole any merchandise from Penney's. Plaintiff testified that Garcia had bought the items in the Ward's bag at Ward's and that the bag was stapled shut with a receipt on the top. Garcia did not testify.

Theft charges were brought against plaintiff and Garcia. The allegedly stolen items, retained in the Penney security office for safekeeping, were either lost or destroyed prior to the criminal trial. The theft charges against plaintiff were dismissed. Garcia was allowed to plead guilty to a lesser charge of trespass.

Prior to trial in the present case the parties stipulated that at the time of the arrest Dahlke was a full-time employee of the City of Orange Police Department, was working within the scope of his employment as a security officer at the Penney store in the City of Huntington Beach and was being paid by Penney. They further stipulated that plaintiff was arrested on the Penney premises by Dahlke and that Dahlke caused someone from the Huntington Beach Police Department to come to the store and take plaintiff into custody and book him. Also introduced at this time was an agreement which had been executed by the chiefs of police of the cities of Orange County (including the Cities of Orange and Huntington Beach) in which each consented pursuant to Penal Code section 830.1 to extend the authority of peace officers within his jurisdiction to any member of the other signatory police departments.

Based upon the stipulations and the consent agreement signed by the police chiefs the trial court determined that Dahlke was acting as a peace officer at the time of the arrest and thereafter instructed the jury on the standards applicable to arrests by peace officers.

■ Plaintiff contends that the instructions on the standards for determining the legality of his arrest were erroneous because Dahlke was acting as a private citizen in the course of his private employment when he made the arrest. ■ The authority of a private citizen to make an arrest is more limited than that of a peace officer. A peace officer may arrest a person without a warrant whenever he has probable cause to believe that the person has committed a misdemeanor in his presence. (Pen. Code, § 836, subd. 1.) A private citizen, however, may arrest another for a misdemeanor only when the offense has actually been committed or attempted in his presence. (Pen. Code, § 837, subd. 1.)

■ Plaintiff argues that the trial court's determination that Dahlke was acting as a peace officer at the time of the arrest is contrary to our recent decision in *People* v. *Corey* (1978) 21 Cal.3d 738 [147 Cal.Rptr. 639, 581 P.2d 644]. We agree. In *Corey* we held that an off-duty police officer who was acting within the scope of his employment as a private security guard was not engaged in the performance of his duties as a peace officer for purposes of application of the enhanced punishment provisions of Penal Code section 243 for battery on a peace officer. Our holding was based on a number of statutory provisions which, in our view, evinced a legislative policy against according peace officer status and protections to actions of off-duty police officers performed within the course and scope of their private employment as security guards. These provisions include the Private Investigator and Adjuster Act (PIAA) (Bus. & Prof. Code, § 7500 et seq.) and Penal Code section 70.

■ The PIAA is a comprehensive act which regulates the occupations of private investigator, private security guard and similar pursuits. Its provisions reveal an intent of the Legislature to eliminate to the extent possible public confusion between private security guards and local law enforcement officers. The PIAA provides that no person subject to its regulatory provisions may "use a title, or wear a uniform, or use an insignia, or use an identification card, or make any statement with the intent to give an impression that he is connected in any way with . . . any political subdivision of a state government." (Bus. & Prof. Code, § 7538, subd. (e).)

■ We held in *Corey* that peace officers are subject to the regulatory provisions of the PIAA when they are employed during their off-duty hours as private security guards. A police officer is thus prohibited from wearing his uniform or indicating in any way that he is a police officer when he is acting within the scope of his private employment as a security guard. Although an off-duty police officer may perform various acts in his capacity as a private security guard which coincide with his duties as a peace officer, we concluded in *Corey* that the Legislature's deliberate decision in 1973 to include such persons within the regulatory provisions of the PIAA indicated a policy "whereby the fact of private employment operates to prevent a peace officer from acting in what would otherwise be his official capacity."[1] (21 Cal.3d at p. 745.)

■ More important in the present inquiry, however, is Penal Code section 70 wherein the Legislature has specifically made it illegal for any public employee or officer to receive any "emolument, gratuity or reward, or promise thereof . . . for doing an official act." Since a police officer is forbidden from receiving private payment for the performance of his official duties, we concluded in *Corey* that the officer there must have been performing private rather than official duties while he was acting within the course and scope of his private employment as a security guard during his off-duty hours.

Our reasoning in *Corey* leads to a similar conclusion in this case. If what Dahlke was doing was not in violation of Penal Code section 70, it must be because he was performing private rather than official duties while he was acting within the course and scope of his private employment with J. C. Penney. If Dahlke was performing only a private contractual duty at the time he arrested plaintiff, it logically follows that he was not acting pursuant to his official duties as a peace officer. Since it would have been illegal for Dahlke to have been acting as a peace officer in the performance of official duties at the time he arrested plaintiff pursuant to his private employment, we conclude that Dahlke was acting as a private citizen when he arrested plaintiff. ■ It is thus the fact of private employment which operates to prevent a peace officer from acting in what would otherwise be his official capacity. We do not suggest that a peace officer's official duties necessarily cease at the end of his normal

---

[1]Although we recognize that the arrest in this case occurred in 1971 when peace officers were exempted from the operation of the PIAA so long as their private employment did not exceed 50 hours per calendar month, we do not find lack of coverage under the PIAA to be determinative of the issue in this case. As will appear, it is the provisions of Penal Code section 70 rather than the PIAA which, in our view, are determinative in this case.

working hours (cf. *People* v. *Derby* (1960) 177 Cal.App.2d 626, 630-631 [2 Cal.Rptr. 401]) where there are no private contractual duties of the nature involved in this case. (See *People* v. *Corey, supra,* 21 Cal.3d at p. 746.) ■ We disapprove *Dowdell* v. *Owl Drug Co.* (1932) 121 Cal.App. 316 [8 P.2d 890] and *People* v. *Millard* (1971) 15 Cal.App.3d 759 [93 Cal.Rptr. 402], to the extent they are inconsistent with this opinion.

It therefore follows that the court erred in instructing the jury on the standards applicable to an arrest by a peace officer. It has been urged, however, that the error does not require reversal because proper instructions in this case would still have included the concept of probable cause in determining the lawfulness of Dahlke's actions on behalf of J. C. Penney Co.

■ At the time of the arrest in this case, merchants were protected from civil liability for false arrest or false imprisonment by a common law privilege that permitted the merchant to detain for a reasonable time and in a reasonable manner for investigation any person whom the merchant had probable cause to believe had unlawfully taken or attempted to take merchandise from the premises. (*Collyer* v. *S. H. Kress Co.* (1936) 5 Cal.2d 175 [54 P.2d 20]; *King* v. *Andersen* (1966) 242 Cal.App.2d 606 [51 Cal.Rptr. 561]; *People* v. *Zelinski* (1979) *ante,* p. 357 [155 Cal.Rptr. 575, 594 P.2d 1000].) The privilege to detain upon probable cause was established in an effort to harmonize the individual right to liberty with the inherent right of an owner of property to protect his interest in that property. (*Collyer* v. *S. H. Kress & Co., supra,* 5 Cal.2d at pp. 180-181; see Note, *The Privilege of Detention for Investigation: Collyer v. Kress Co. Revisited* (1961) 13 Hastings L.J. 156; Note, *Merchants' Responses to Shoplifting: An Empirical Study* (1976) 28 Stan.L.Rev. 589, 592-594.) The merchant's privilege has since been codified as subdivision (e) of Penal Code section 490.5. That section provides in part that a merchant may detain a person for a reasonable time when he has probable cause to believe the person is shoplifting, that he may use reasonable nondeadly force in effecting such a detention, that he may examine any items in plain view which he has reasonable cause to believe have been unlawfully taken from his premises, and that it shall be a defense to an action for false arrest or imprisonment based upon such a detention that the merchant had probable cause to believe the person detained had stolen or attempted to steal merchandise and that the merchant acted reasonably under the circumstances.[2]

---

[2]Subdivision (e) provides in pertinent part: "(1) A merchant may detain a person for a reasonable time for the purpose of conducting an investigation in a reasonable manner whenever the merchant has probable cause to believe the person to be detained is

■ ■■■■ The applicability of the probable cause defense in this case depends upon whether the merchant's privilege extends to suits based upon an arrest as well as upon a detention.[3] In *Collyer,* the case that established the privilege, the court's inquiry was limited to the question of the right of the merchant to detain upon probable cause; the arrest in that case was made by the police. (*Collyer* v. *S. H. Kress & Co., supra,* 5 Cal.2d at pp. 179-180.) The subsequent codification of the privilege in subdivision (e) of Penal Code section 490.5 also refers only to detentions. There is no suggestion in either of these authorities that the privilege should include arrests as well, and there are sound policy reasons for not so extending the privilege. ■■■■■ Extension of the privilege to include the right of a merchant to arrest for a misdemeanor upon probable cause would effectively eradicate the clearly intended statutory distinction between the authority of a peace officer and of a private citizen to effect an arrest for a misdemeanor.[4] It would also

attempting to unlawfully take or has unlawfully taken merchandise from the merchant's premises.

" . . . . . . . . . . . . . . . . .
"(2) In making the detention a merchant . . . may use a reasonable amount of nondeadly force necessary to protect himself and to prevent escape of the person detained or the loss of property.

"(3) During the period of detention any items which a merchant . . . has reasonable cause to believe are unlawfully taken from the premises of the merchant . . . and which are in plain view may be examined by the merchant . . . for the purposes of ascertaining the ownership thereof.

"(4) In an action for false arrest, false imprisonment, slander or unlawful detention brought by any person detained by a merchant, it shall be a defense to such action that the merchant detaining such person had probable cause to believe that the person had stolen or attempted to steal merchandise and that the merchant acted reasonably under all the circumstances."

Subdivision (e) became effective on January 1, 1977. The Legislature made clear that the provisions of subdivision (e) of section 490.5 "do not constitute a change in, but are declaratory of, the existing law, and such provisions shall not be interpreted to amend or modify Sections 837, 847, and 849 of the Penal Code." (Stats. 1976, ch. 1131, § 3, p. 5049.)

Subdivision (e) was amended in 1978 to add an analogous privilege for prevention of library theft. (Stats. 1978, ch. 593, § 2, p. —.)

[3]We reject plaintiff's assertion that the merchant's privilege was inapplicable to him because he was not carrying the bags which were thought to contain the stolen goods. The reasoning underlying the establishment of the privilege, in our view, is clearly broad enough to encompass a privilege to detain a person whom the merchant has probable cause to believe has been assisting another in shoplifting and who is accompanying the latter when he is stopped.

[4]The authority of a peace officer to make a warrantless arrest for a misdemeanor was formerly coextensive with the authority of a private person. Each was authorized to arrest for a "public offense committed or attempted in his presence." (See Pen. Code, §§ 836, 837.) In 1952, in *Coverstone* v. *Davies,* 38 Cal.2d 315 [329 P.2d 876], we interpreted such language in section 836 as authorizing a peace officer to arrest when he has probable cause to believe a misdemeanor is being committed in his presence. In 1957, the Legislature amended section 836 to authorize a peace officer to make a warrantless arrest

upset the delicate balance struck in *Collyer* between the individual's right to liberty and the property owner's right to protect his property. ██ A privilege to detain was deemed sufficient to protect the property owner's private interest in preventing the theft of his property (see also *People* v. *Zelinski, supra, ante* at p. 364), whereas a privilege to arrest a person who had not in fact committed an offense in the merchant's presence solely on the basis of probable cause would constitute a substantial further encroachment on the individual's right to liberty.[5] Accordingly, we conclude that the merchant's probable cause defense is limited to suits based upon a detention and does not extend to suits based upon an arrest.

Since in this case the false imprisonment cause of action was based upon Dahlke's arrest of plaintiff,[6] the instructions on the lawfulness of Dahlke's actions as a private person should not have stated that the arrest was lawful if Dahlke had probable cause to believe an offense was committed in his presence.

 We also conclude that the error was prejudicial. On the evidence before it the jury could have found that plaintiff committed no offense in Dahlke's presence but that Dahlke had probable cause to believe that plaintiff did so. Since the defense verdict may have been based on this erroneous theory, it is reasonably probable that a result more favorable to plaintiff would have been reached in the absence of the error. The error therefore requires reversal. (*Henderson* v. *Harnischfeger Corp.* (1974) 12 Cal.3d 663, 673-674 [117 Cal.Rptr. 1, 527 P.2d 353]; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; Cal. Const., art. VI, § 13.)

For guidance in the event of a retrial, we will address certain of plaintiff's other contentions.

---

"whenever he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence." In so doing, however, the Legislature left section 837 on citizen arrest untouched, thereby indicating an intent to distinguish between the authority of a peace officer and of a private citizen to arrest for a misdemeanor.

[5]Although the line may at times be a fine one, there is a well-settled distinction in law between an arrest and a detention. A detention is a lesser intrusion upon a person's liberty requiring less cause and consisting of briefly stopping a person for questioning or other limited investigation. (See *Dawkins* v. *City of Los Angeles* (1978) 22 Cal.3d 126, 132-135 [148 Cal.Rptr. 857, 583 P.2d 711]; *In re Tony C.* (1978) 21 Cal.3d 888, 892-896 [148 Cal.Rptr. 366, 582 P.2d 957].)

[6]The parties in this case stipulated that Dahlke arrested plaintiff.

■ Plaintiff contends the court erred in instructing the jury that the plaintiff had the burden to prove the unlawfulness of the arrest in the cause of action for false imprisonment. Plaintiff argues that since there was uncontradicted evidence that he was arrested and imprisoned without a warrant, the burden was on defendants to show justification. Plaintiff's argument is amply supported by authority. (See, e.g., *Monk* v. *Ehret* (1923) 192 Cal. 186, 189 [219 P. 452]; *Hughes* v. *Oreb* (1951) 36 Cal.2d 854, 858 [228 P.2d 550]; *Dragna* v. *White* (1955) 45 Cal.2d 469, 471 [289 P.2d 428]; *Collins* v. *Jones* (1933) 131 Cal.App. 747, 750 [22 P.2d 39]; *Kaufman* v. *Brown* (1949) 93 Cal.App.2d 508, 511-513 [209 P.2d 156]; *Collins* v. *Owens* (1947) 77 Cal.App.2d 713, 715-718 [176 P.2d 372].)

■ It has long been the law that a cause of action for false imprisonment is stated where it is alleged that there was an arrest without process, followed by imprisonment and damages. ■ ■ ■ Upon proof of those facts the burden is on the defendant to prove justification for the arrest.[7] (See *Hughes* v. *Oreb, supra,* 36 Cal.2d at p. 858; *Dragna* v. *White, supra,* 45 Cal.2d at p. 471.) Considerations of both a practical and policy nature underlie this rule. The existence of justification is a matter which ordinarily lies peculiarly within the knowledge of the defendant. The plaintiff would encounter almost insurmountable practical problems in attempting to prove the negative proposition of the nonexistence of any justification. (See *People* v. *Agnew* (1940) 16 Cal.2d 655, 663-664 [107 P.2d 601].) This rule also serves to assure that official intermeddling is justified, for it is a serious matter to accuse someone of committing a crime and to arrest him without the protection of the warrant process. (See Evid. Code, § 664; see also Evid. Code, § 520.)

We are convinced that the present rule is supported by sound authority and logic, and we therefore decline to depart from it.[8] We disapprove *Whaley* v. *Kirby* (1962) 208 Cal.App.2d 232 [25 Cal.Rptr. 50] and *Wilson* v. *County of Los Angeles* (1971) 21 Cal.App.3d 308 [98 Cal.Rptr. 525], to the extent they are inconsistent with this opinion.

---

[7]Although there has occasionally been some confusion about the meaning of the term "burden of proof," it has always been used in this situation to refer to the burden of persuasion on the issue rather than simply the burden of producing evidence on it. (See *People* v. *Agnew* (1940) 16 Cal.2d 655, 663-667 [107 P.2d 601]; *Hughes* v. *Oreb, supra,* 36 Cal.2d at p. 858; *Dragna* v. *White, supra,* 45 Cal.2d at p. 471; see also Evid. Code, §§ 115, 605, 520.)

[8]It is noteworthy that the Legislature has specifically excepted the issue of the lawfulness of a warrantless arrest from the general presumption that an official duty has

Plaintiff further contends that the court erred in granting defendant's motion for nonsuit as to the causes of action for intentional infliction of emotional distress and negligence. ■ A nonsuit may be granted only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff. (*Estate of Callahan* (1967) 67 Cal.2d 609, 612 [63 Cal.Rptr. 277, 432 P.2d 965].)

■ The elements of a prima facie case for the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. (*Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 394 [89 Cal.Rptr. 78, 47 A.L.R.3d 286]; *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 497-499 [86 Cal.Rptr. 88, 468 P.2d 216]; *State Rubbish etc. Assn.* v. *Siliznoff* (1952) 38 Cal.2d 330, 336-339 [240 P.2d 282]; 4 Witkin, Summary of Cal. Law (8th ed.) Torts, §§ 234-237, pp. 2515-2517.) "Whether treated as an element of the prima facie case or as a matter of defense, it must also appear that the defendants' conduct was unprivileged." (*Fletcher* v. *Western National Life Ins. Co., supra,* 10 Cal.App.3d at p. 394; *State Rubbish etc. Assn.* v. *Siliznoff, supra,* 38 Cal.2d at p. 339; Rest.2d Torts, § 46, com. g.) Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community. (*Alcorn* v. *Anbro Engineering, Inc., supra,* 2 Cal.3d at p. 499, fn. 5; *Fuentes* v. *Perez* (1977) 66 Cal.App.3d 163, 170 [136 Cal.Rptr. 275]; Rest.2d Torts, § 46, com. d.)

■ We agree with plaintiff that the court erred in granting defendants' motion for nonsuit on the cause of action for intentional infliction of emotional distress. Although there was strongly conflicting evidence on the question, plaintiff presented evidence which, if believed, would reasonably support an inference that Dahlke arrested him either with knowledge that plaintiff had not committed any offense or with reckless disregard of whether he had or not. That evidence, along with other

been regularly performed. (Evid. Code, § 664.) No reason appears why a presumption of lawfulness should attach to an arrest by a private citizen when the Legislature has chosen to deny such a presumption to a warrantless arrest by a peace officer.

evidence presented by plaintiff, would have been sufficient to support a verdict in his favor on this cause of action.[9]

No error appears in the granting of the motion for nonsuit on the negligence cause of action. The sole allegation of negligence contained in the complaint reads as follows: "At said time and place, defendants, and each of them, *so negligently, carelessly and unproperly* [*sic*] *selected, hired, trained, defendant, Dennis R. Dahlke,* as a security officer for said store as to cause said defendant, Dennis R. Dahlke, to assault, batter, and falsely and carelessly accuse plaintiff of a crime, to cause plaintiff to suffer severe emotional and physical distress and shame and humiliation, to falsely imprison plaintiff and cause plaintiff to be falsely prosecuted by the authorities for crimes plaintiff did not commit, *and to cause* the evidence of his innocense [*sic*] to be lost or destroyed so that he could not quickly acquit himself of any such alleged crimes." (Italics added.)

The charged negligence was in the selecting, hiring and training of Dahlke. There was a total failure of proof of any negligence in hiring or training. Upon realizing this at the time of the motion for nonsuit, plaintiff unsuccessfully moved to amend the complaint to allege negligence in the arrest and in the preservation of the property seized. Given the magnitude of the proposed amendment and the stage of the proceedings, it cannot be said that the court abused its discretion in denying leave to amend. (See *Young* v. *Berry Equipment Rentals, Inc.* (1976) 55 Cal.App.3d 35, 38-40 [127 Cal.Rptr. 200]; *Bedolla* v. *Logan & Frazer* (1975) 52 Cal.App.3d 118, 135-136 [125 Cal.Rptr. 59]; Code Civ. Proc., § 473; 3 Witkin, Cal. Procedure (2d ed.) Pleading, § 1048, pp. 2623-2625.)

The judgment insofar as it reflects the granting of the motion for nonsuit on the cause of action for negligent conduct is affirmed; in all other respects the judgment is reversed.

Bird, C. J., Tobriner, J., Mosk, J., Clark, J., Richardson, J., and Newman, J., concurred.

---

[9]It would not, however, be sufficient to establish a cause of action for intentional infliction of emotional distress for the jury to find that Dahlke falsely arrested plaintiff, for, as we have seen, such a finding could be based on no more than a reasonable mistake on Dahlke's part that plaintiff had committed an offense in his presence.