James MATHIS, Plaintiff–Appellee–Cross–Appellant,

v.

PACIFIC GAS AND ELECTRIC COMPANY, Defendant–Appellant–Cross–Appellee.

James MATHIS, Plaintiff–Appellee–Cross–Appellant,

v.

PACIFIC GAS AND ELECTRIC COMPANY, Defendant–Appellant–Cross–Appellee.

James MATHIS, Plaintiff–Appellee,

v.

PACIFIC GAS AND ELECTRIC COMPANY, Defendant–Appellant.

Nos. 93–55390, 93–55391 and 93–56215.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 5, 1995.

Decided Jan. 24, 1996.

---

Kenneth E. Johnson and Gordon E. Krischer, O'Melveny & Myers, Los Angeles, California, for Defendant–Appellant–Cross–Appellee.

Barrett S. Litt, Litt & Marquez, Los Angeles, California, for Plaintiff–Appellee–Cross–Appellant.

Before: WALLACE, Chief Judge, BOOCHEVER, and KOZINSKI, Circuit Judges.

KOZINSKI, Circuit Judge.

This case presents a question of abiding importance: How deeply may the government get involved in the actions of a private party before we subject these acts to constitutional strictures? For better or worse, almost everyone these days occasionally acts under the influence of government regulations. But normally, it's only governmental actions, taken in the name of the public, backed by the threat of organized force, and financed with tax dollars, that are subject to constitutional requirements, including procedural fairness and equal protection. While we sometimes treat acts of private parties as public, we do so sparingly. "Careful adherence to the 'state action' requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982).

I

In late 1984, the Pacific Gas and Electric Company (PG & E) began an undercover investigation to pursue rumors of drug use at its Diablo Canyon nuclear power plant. When the investigation ended in June 1985, one of those caught in its net was James Mathis, an employee of Bechtel Power Corporation, which had a construction contract at the plant. PG & E's undercover agent reported that Mathis had, in workplace conversations, agreed to sell marijuana offsite. Although Mathis never sold any drugs, PG & E summarily barred him from the plant. Because Bechtel had hired Mathis for the PG & E job, it promptly fired him.

Mathis sued PG & E, claiming that its decision to exclude him violated his constitutional rights to due process and equal protection. As PG & E is a private entity, Mathis argued under two theories that its acts were imbued with governmental authority. First, he claimed PG & E acted under the policies of, and was thus an alter ego for, the Nuclear Regulatory Commission (NRC), exposing it to liability under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcot-*

*ics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Second, he argued that PG & E conducted its undercover operation in such close partnership with the San Luis Obispo County Narcotics Task Force that its later decision to exclude him from the plant was attributable to the Task Force as part of a "joint action," exposing PG & E to liability under 42 U.S.C. § 1983.

In addition to these federal claims, Mathis brought state-law claims for intentional infliction of emotional distress and, under the Unruh Civil Rights Act, Cal.Civ.Code § 51 et seq., for arbitrary denial of access to a place of public accommodation.[1]

The case has been here once before. At that time, the district court had dismissed Mathis's lawsuit for lack of subject matter jurisdiction on the ground that his *Bivens* claim failed to raise a substantial federal question. We reversed based on Mathis's allegation that an informal NRC policy had required PG & E to exclude him. *See Mathis v. Pacific Gas & Elec. Co.*, 891 F.2d 1429, 1434 (9th Cir.1989) (*Mathis I*). On remand, the case went to trial. The district court dismissed the Unruh Act claim during trial, VII R.T. at 276–77, and the jury found for Mathis on the remaining claims at issue in this appeal. PG & E moved for judgment as a matter of law or a new trial; Mathis moved for attorney's fees as the prevailing party in a section 1983 suit. The court granted PG & E's motion as to Mathis's equal protection claims and awarded Mathis attorney's fees and costs. CR 239 at 2.

■■■ Whether a complaint should be dismissed or a motion for judgment as a matter of law denied are questions of law which we decide de novo. *See Brown v. Cowden Livestock Co.*, 187 F.2d 1015, 1017 (9th Cir.1951) (appellate courts decide questions of law de novo). Judgment as a matter of law is appropriate "if the evidence and its inferences considered as a whole and viewed in the light most favorable to the nonmoving party, can support only one reasonable conclusion—that the moving party is entitled to judgment notwithstanding the verdict." *Kern v. Levolor Lorentzen, Inc.,* 899 F.2d 772, 775 (9th Cir.

---

1. Mathis brought several other claims that aren't before us.

1990); Fed.R.Civ.P. 50(a)(1). Dismissal is appropriate where the complaint fails to state a claim. *See Stone v. Travelers Corp.*, 58 F.3d 434, 436–37 (9th Cir.1995).

PG & E appeals the partial denial of its motion for judgment as a matter of law; Mathis appeals the dismissal of his Unruh Act claim and the judgment against him on his equal protection claims.

## II

■ To prevail under either *Bivens* or section 1983, Mathis had to show that PG & E's actions were fairly attributable to the federal or state government. *Lugar*, 457 U.S. at 936, 102 S.Ct. at 2753.

## A

■ In our prior opinion we held that, to prove federal action for his *Bivens* claim, Mathis needed to show PG & E decided to exclude him pursuant to an NRC "standard of decision for the exclusion of illegal drug users from protected areas." *Mathis I*, 891 F.2d at 1434. It wasn't enough to show that PG & E was aware of a generalized federal concern with drug use at nuclear power plants, or even that specific government standards would have required exclusion on some materially different set of facts. The NRC pressure must so have influenced PG & E's decision "that the choice must in law be deemed to be that of the [agency]." *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982). At the time PG & E decided to exclude Mathis, no published NRC standard compelled its decision. Mathis contends, however, that there was an informal policy that did control. We consider whether he presented sufficient evidence as to the existence of such a policy.

Mathis brought two kinds of proof to support his *Bivens* claim. First, he tried to show the NRC was directly pressuring PG & E to adopt strong anti-drug policies. Second, he brought evidence that nuclear industry groups were pressuring their members to adopt stricter drug policies in order to mollify the NRC and keep it from promulgating mandatory rules on the subject.

The evidence of direct NRC pressure was that in 1984 and 1985 PG & E was seeking permission to start up its Diablo Canyon reactor and was consequently trying to please the NRC. The evidence also indicated that PG & E considered a vigorous drug enforcement effort an important part of making a good impression. This evidence could have justified a conclusion that PG & E felt compelled to follow even informal NRC standards. What Mathis failed to demonstrate, however, was the existence of an NRC policy (formal or informal) which could have compelled PG & E's decision.

Mathis's strongest proof consisted of internal PG & E memoranda summarizing the comments of an NRC inspector who visited Diablo Canyon a few days before Mathis left. According to these documents, the inspector urged on PG & E a rule that would have excluded for offsite drug involvement only "[p]eople in key assignments," and then only until the company was satisfied they wouldn't present a hazard on the job or otherwise affect the company. Mathis's E.R. at 445, 447. Mathis didn't hold a sensitive job (he was essentially a messenger) nor was he drug-impaired at work. He presented endless evidence that PG & E was looking to score Brownie points with the NRC, but none indicating that the NRC was promoting a rule that would have excluded someone involved in the type of conduct he was suspected of. Without that missing link, the evidence he brought, however copious, fell short.

No more compelling was Mathis's proof that PG & E reacted to indirect NRC pressure through the nuclear industry. He proved that, in 1984 and 1985, industry groups were trying to convince the NRC that it shouldn't promulgate rules on personnel drug policies. Their principal argument was that utilities were already dealing with the problem by way of private personnel policies. They also argued that personnel management was a particularly unsuitable subject for regulation. Mathis's most damning evidence, however, merely hints that, at some point before November 1986, the industry began "addressing off-site use and sale of drugs" and boasted of these efforts "which

the previously approved NRC rule did not address." Mathis's E.R. at 439. There's no indication that the NRC had proposed a standard that would have required PG & E to exclude him.

■ Mathis argues that he comes close enough because his evidence supports a finding that any measures PG & E took against drug involvement at Diablo Canyon were designed to allay NRC concerns. In essence, he asks us to hold that regulatory interest in a problem transforms any subsequent private efforts to address the problem (even those expressly designed to obviate the need for regulation) into state action. There was no hint of any such notion in *Mathis I* and we reject it now.[2] If the government is considering regulation, affected private parties can try to convince it there's no need to regulate without thereby transforming themselves into the state's agents.

In *Mathis I*, we reversed the dismissal of Mathis's claim because he had brought forward an NRC policy statement from 1986 (after he left Diablo Canyon) that seemed to set a standard excluding all drug users from power plants: Upon finding that an employee used, possessed or sold illegal drugs, a utility had to revoke unescorted plant access at once. Had there been such a policy in 1985, it might have supported a jury finding that PG & E followed it in excluding Mathis. Consequently, we held that "[i]f Mathis can prove his allegations that in 1985 the NRC was maintaining an informal policy equiva-

lent to the policy it published in 1986, he may be able to establish that PG & E's action can 'be ascribed to governmental action.' " *Mathis I*, 891 F.2d at 1434. On remand, Mathis failed to do so. The record shows no such policy in effect when PG & E revoked his access; nor did he bring any other proof that PG & E was acting as the NRC's agent. Therefore, the district court erred in denying PG & E's motion for judgment as a matter of law on his *Bivens* claims.

**B**

■ We turn to Mathis's claim under 42 U.S.C. § 1983. To support this claim, Mathis had to show that PG & E was standing in for state or local authorities when it decided to bar him from Diablo Canyon. Mathis tried to prove this by showing that PG & E conducted its undercover investigation in close cooperation with the San Luis Obispo County Narcotics Task Force.

■ There are various means for pegging section 1983 liability on private persons. *See Lugar*, 457 U.S. at 939, 102 S.Ct. at 2754–55. Mathis pursued a "joint action" theory, which attributes to the state actions of private persons who are "willful participant[s] in joint action" with state officials. *Dennis v. Sparks*, 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980).[3] A private person is liable under this theory, however, only if the particular actions challenged are inextricably intertwined with those of the government.[4] *See Collins v. Womancare,*

---

**2.** Mathis argues we adopted such a standard when we held that airport searches by private persons were state action. *See United States v. Davis*, 482 F.2d 893, 895 (9th Cir.1973) (Browning, J.). He ignores our en banc decision in *United States v. Gumerlock*, 590 F.2d 794, 796 (9th Cir.1979) (Browning, J.). *Gumerlock* refused to expand *Davis* to include searches of air freight which, unlike the passenger search in *Davis*, were not mandated by the national air traffic safety program. The government policy doesn't have to be formal, but it does have to compel the challenged action.

**3.** PG & E mistakenly argues that Mathis had to show it not only acted in an official capacity but also exercised some right or privilege under state law. PG & E Br. at 28–29. Although private section 1983 liability generally requires a showing of both, *see Lugar*, 457 U.S. at 937, 102 S.Ct.

at 2753–54, where the defendant's "official character is such as to lend the weight of the State to his decisions," *id.*, the two merge. Had Mathis succeeded in showing that PG & E's decision amounted to "joint action" with the state, the official character of its partners would suffice.

**4.** Mathis seeks the best of both worlds by citing *Mathis I* for the proposition that the state need not have directed the particular decision challenged. 891 F.2d at 1433–34. Our statement there, however, addressed a different theory of state action: that PG & E acted as the NRC's alter ego because it followed a federal rule of decision. In that context, we noted, Mathis only had to show a rule, not a specific order. Under a joint action theory, however, the issue isn't whether the action was taken pursuant to a state rule of decision, but whether the private person was "jointly engaged with state officials in the

878 F.2d 1145, 1154 (9th Cir.1989), *cert. denied,* 493 U.S. 1056, 110 S.Ct. 865, 107 L.Ed.2d 949 (1990).

The specific action Mathis challenges is the procedure by which PG & E decided to exclude him from its plant. He claims PG & E should have applied to him the same standard it used for its own employees, Mathis's Br. at 40–41, and that it should have given him notice of the charges and an opportunity to respond before taking action it knew would cost him his job, *id.* at 32–33. Accordingly, he needed to prove not merely that PG & E had a close relationship with the Task Force, but also that the relationship encompassed PG & E's plant-access decisions.

Mathis presented no such evidence; he proved only that PG & E conducted its investigation in close cooperation with the Task Force. Were he complaining the investigation itself had violated his civil rights—that the undercover agent had dragged him into a basement and pummeled him into confessing drug use, for instance—that would likely have supported a verdict on a joint action theory. But Mathis's challenge is limited to PG & E's decision-making process after the investigation was completed. He has claimed from the very beginning that only PG & E and Bechtel managers were involved, *see* C.R. 1 ¶ 9 (complaint); he presented no evidence to the contrary at trial. In fact, the evidence on this point was that the Task Force had "no involvement" with internal PG & E disciplinary decisions, IV–A R.T. at 139, and that any consultation and information sharing ceased at "such time as [PG & E and the Task Force] determined [the investigation was] only for disciplinary action," *id.* at 141, not criminal prosecution.

Mathis nonetheless argues that, without an investigation, he wouldn't have been excluded, so that a jury could attribute his exclusion to a joint "course of conduct" that re-

sulted in the loss of his job. Mathis's Br. at 26. He relies on *Howerton v. Gabica,* 708 F.2d 380, 384 (9th Cir.1983), which held private landlords liable under section 1983 for an illegal eviction because they were helped by the police, who were present to prevent trouble. The Gabicas, however, "deliberately cloaked themselves with the authority of the state *in effecting repossession." Id.* at 384–85 (emphasis added). Here, the Task Force wasn't involved in the decision to exclude Mathis from the plant. Whether or not its previous acts facilitated the decision, the mantle of its authority didn't. In short, Mathis brought no evidence PG & E relied on the direct or indirect support of state officials in making and carrying out its decision to exclude him.[5]

## C

The record contains no evidence that PG & E decided to exclude Mathis under an NRC policy or in cooperation with the Task Force. Thus his *Bivens* and section 1983 claims had no factual support and the district court erred in denying PG & E's motion for judgment as a matter of law on both due process claims.[6]

## III

PG & E also appeals the district court's denial of its motion for judgment as a matter of law on Mathis's claim for intentional infliction of emotional distress. Unlike his federal claims, this state law tort doesn't require any showing of state action. The district court erred only if Mathis presented no evidence that "PG & E's conduct towards ... Mathis in its investigation, decisionmaking, and denial of his access to Diablo Canyon constituted intentional infliction

---

prohibited action." *United States v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 1156–57, 16 L.Ed.2d 267 (1966).

**5.** PG & E also argues that Mathis's claim is barred by res judicata. The district court dismissed his original section 1983 claim without leave to amend for lack of subject matter jurisdiction and we affirmed. *See Mathis I,* 891 F.2d at 1431. The present claim thus alleges that the

same person violated the same rights through the same actions and differs only in the theory by which it attributes those actions to the state. While this claim appears to have merit, we need not address it.

**6.** Because Mathis failed to show state action, we needn't decide whether PG & E deprived him of property or denied him equal protection by causing him to lose his job with Bechtel.

of emotional distress." Amended Pre–Trial Conference Order, Mathis's E.R. at 6.

To prove his claim, Mathis had to show "extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress." *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 156 Cal.Rptr. 198, 595 P.2d 975, 983 (1979). Liability for this tort, however, is severely limited where the defendant merely exercises a legal right. PG & E was "[u]ndoubtedly ... privileged, in pursuing its own economic interests, to assert in a permissible way its legal rights ... in good faith ... even though it [was] substantially certain that in so doing emotional distress [would] be caused." *Fletcher v. Western Nat'l Life Ins. Co.*, 10 Cal.App.3d 376, 89 Cal.Rptr. 78, 89 (1970); Restatement (Second) of Torts § 46 cmt. g. As a landowner it had "a right to exclude persons from trespassing on private property [and] the right to exclude persons is a fundamental aspect of private property ownership." *Allred v. Harris*, 14 Cal.App.4th 1386, 18 Cal. Rptr.2d 530, 533 (1993).

The outer limits of a landowner's privilege are very far from the normal course of commercial relations. As a private actor without any contractual obligations to Mathis, PG & E could exercise its property rights against him for its own reasons, whether or not it was likely to cause him emotional distress. It could be liable only for acting in bad faith (knowing it had no basis for asserting a property right against him) or in a wholly indecent manner. *Fletcher*, 89 Cal.Rptr. at 89.

What's more, PG & E's privilege in this case is broader even than that of an ordinary property owner. Diablo Canyon is a very sensitive property; it holds a nuclear power plant—an instrumentality of potentially immense destructive power, as well as a source of necessary energy for a great many people. PG & E's legitimate interests in excluding those who might interfere with the plant's operation run far beyond those of an average homeowner or shopkeeper. PG & E has good reason to worry about security and err on the side of caution in evaluating the trustworthiness of those it allows on the premises.

Measures that might be impermissible if used to protect a more mundane site would be privileged in light of the extreme danger and sensitivity of PG & E's business.

Nor did the evidence Mathis presented support a finding that PG & E exercised its rights outrageously or in bad faith. PG & E believed it had a property right pursuant to which it was entitled to exclude him. The manner in which PG & E asserted this right was far from outrageous: Mathis wasn't dragged out in chains or paraded off the premises in a public display to set an example. PG & E just asked him to leave. IV R.T. at 147. Even viewed in the light most favorable to Mathis, PG & E didn't assert its rights in an outrageous fashion. Accordingly, the district court erred in denying PG & E's motion for judgment as a matter of law on this claim as well.

## IV

Mathis appeals the district court's dismissal of his claim under the Unruh Civil Rights Act, Cal.Civ.Code §§ 51 *et seq.*, for denial of equal accommodation in a business establishment. By its terms, the Unruh Act can't "be construed to confer any right or privilege on a person ... which is applicable alike to persons of every sex, color, race, religion, ancestry, or national origin." *Id.* Mathis makes no claim that PG & E discriminated on any such basis. California's courts have also construed the Act to prohibit only arbitrary exclusions from business establishments generally open to the public, *see In re Cox*, 3 Cal.3d 205, 90 Cal.Rptr. 24, 31, 474 P.2d 992, 999 (1970). A nuclear power plant obviously doesn't fit that description. We affirm the district court's decision to dismiss this claim.

\* \* \* \* \* \*

Mathis presented no evidence to support his claims that when PG & E decided to exclude him, it acted as the alter ego of the NRC or as part of a joint action with the San Luis Obispo County Narcotics Task Force. He therefore failed to establish the federal or state governmental action necessary to support his *Bivens* and section 1983 claims. He also presented no evidence that PG & E

asserted its property right in bad faith or in an outrageous manner and therefore failed to establish an action for intentional infliction of emotional distress. The district court's order partially denying PG & E's motion for judgment as a matter of law is **REVERSED**. For the same reason, its order partially granting that motion is **AFFIRMED**. California's Unruh Act has no application here. The district court's order dismissing Mathis's claim under the Act is therefore **AFFIRMED**. The award of fees and costs is **VACATED**.