Filed 12/9/22 P. v. Taporco CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>TINYAMOR TAPORCO,<br><br>Defendant and Appellant. | F081961<br><br>(Kern Super. Ct. No. BF176685A)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING**<br>[NO CHANGE IN JUDGMENT] |

**THE COURT:**

It is ordered that the opinion filed herein on November 15, 2022, be modified as followed:

1. On page 20, following the heading "***The trial court did not abuse its discretion by denying defendant's request to strike his prior serious felony conviction***," add as footnote 17 the following footnote, which will require renumbering of all subsequent footnotes:

> **17** Defendant's opening brief contains a single argument that "[t]he trial court abused its discretion when it denied [defendant]'s *Romero* request to dismiss the strike priors and the prior serious felony conviction." While defendant recognizes that the threshold for granting a request to dismiss a strike prior is higher than for granting a request to dismiss a prior serious felony conviction enhancement (citing *People v. Bell* (2020) 47 Cal.App.5th 153, 202, fn. 2, (dis. opn. of Detjen, J.)), defendant fails to provide any legal argument addressing the trial court's decision as it relates to the five-year prior felony conviction enhancements. "Every brief should

contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration." (9 Witkin, Cal. Procedure, (3d ed. 1985) Appeal, § 479, p. 469; see also *People v. Ashmus* (1991) 54 Cal.3d 932, 985, fn. 15.) Nonetheless, we have reviewed the record in light of the standard of review in the authorities cited by defendant and find it amply supports the judgment. (See *People v. Shaw* (2020) 56 Cal.App.5th 582, 587 ["No error occurs if the trial court evaluates all relevant circumstances to ensure that the punishment fits the offense and the offender."].)

2. On page 21, the third sentence of the first paragraph beginning with "Between 2007 and 2011, defendant was paroled" is modified to read as follows:

Between 2007 and 2011, defendant was paroled, charged with 11 parole violations, returned to prison approximately six times, and absconded from parole two times until his parole was discharged in July 2011.

Except for the modification set forth, the opinion previously filed remains unchanged.

There is no change in the judgment.
Appellant's petition for rehearing is denied.

HILL, P. J.

WE CONCUR:


POOCHIGIAN, J.


DETJEN, J.

Filed 11/15/22 P. v. Taporco CA5 (unmodified opinion)

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>TINYAMOR TAPORCO,<br><br>    Defendant and Appellant. | F081961<br><br>(Super. Ct. No. BF176685A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County. Kenneth C. Twisselman II, Judge.

Jin H. Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Henry J. Valle, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

Defendant Tinyamor Taporco assaulted H.R., a private citizen attempting to arrest defendant, using a stabbing instrument and after leaving a restaurant where he had threatened employees and stolen unopened beer. A jury convicted defendant of assault with a deadly weapon. The trial court denied defendant's motion to strike his prior convictions and sentenced him to a term of 35 years to life in prison.

Defendant argues that the trial court abused its discretion in admitting evidence of a prior incident where defendant also threatened employees of the restaurant and destroyed refreshment bottles because the evidence was not relevant to the lawfulness of H.R.'s citizen's arrest and because the evidence was unduly prejudicial. Defendant also argues that the trial court abused its discretion in denying his motion to strike his prior convictions. We affirm.

**PROCEDURAL BACKGROUND**

The District Attorney of Kern County filed an amended information on October 16, 2019, charging defendant with assault with a deadly weapon[1] (Penal Code,[2] § 245, subd. (a)(1)), three prior "strike" convictions within the meaning of the "Three Strikes" law (currently codified at §§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), three prior serious felony conviction enhancements (§ 667, subd. (a)), and four prior prison terms (§ 667.5, subd. (b)).[3] Defendant pled not guilty to the charges and denied all allegations.

---

[1]    The amended information alleged that the deadly weapon was a knife but was further amended by interlineation on September 14, 2020, to replace the word "knife" with the words "stabbing instrument."

[2]    Undesignated statutory references are to the Penal Code.

[3]    The amended information alleged that defendant had been convicted of the following serious prior felony convictions: carjacking in 2003 (§ 215, subd. (a)); criminal threats in 2005 (§ 422); and second degree robbery in 2013 (§ 212.5, subd. (c)). On September 1, 2020, the trial court dismissed the strike and serious felony conviction allegations (§ 667, subds. (a), (e)) relating to the 2005 conviction upon motion of the prosecutor as they did not belong to defendant

2.

Trial of defendant commenced on September 2, 2020.[4] The jury convicted defendant of assault with a deadly weapon as charged in count 1 after a nine-day trial on September 15, 2020. After defendant waived his right to a jury trial regarding his prior convictions, the trial court found the allegations to be true on September 22, 2020.

On October 21, 2020, the trial court denied defendant's motion to dismiss his prior strike and serious felony convictions and sentenced him to a term of 25 years to life in prison (§ 667, subd. (e)(2)(A)(ii)), plus 10 years (§ 667, subd. (a)), for a total term of 35 years to life. The trial court found that defendant did not have the ability to pay any fines and fees and did not impose them but did order victim restitution in an amount to be determined by probation. (Former § 1202.4, subd. (f)).

Defendant timely appealed on October 28, 2020.

### FACTS

R.K. is the daughter of the owner of a restaurant in Bakersfield (the restaurant). She sometimes helped out at the restaurant. R.K.'s father and a restaurant employee contacted her on April 12, 2019, and told her that defendant was at the restaurant and the employees were afraid.[5] R.K.'s father asked R.K. to respond to the restaurant to see what was happening. R.K. called H.R. and told him that someone was at the restaurant threatening and scaring the employees and they had asked the individual to leave several

---

and dismissed the four prior prison term allegations in light of Senate Bill No. 136 (2019–2020 Reg Sess.) that narrowed eligibility for the one-year prior prison term enhancement to those who have served prior prison sentences for sexually violent offenses. (§ 667.5, subd. (b), as amended by Stats. 2019, ch. 590, § 1.)

[4]     The trial court found defendant incompetent to stand trial upon motion of defense counsel pursuant to section 1368 on December 5, 2019, and committed defendant to the State Department of State Hospitals on December 27, 2019. The trial court found defendant competent to stand trial and resumed criminal proceedings on March 17, 2020.

[5]     The trial court admonished the jury to consider R.K.'s testimony of what she was told only to explain her conduct.

times.[6]  R.K. told H.R. that the individual was the same individual who had been there before.  R.K. advised H.R. that they called the police and asked H.R. to respond to the restaurant.  R.K. went to the restaurant.

Defendant was present and angry when R.K. arrived at the restaurant.  R.K. entered through the back door.  When she first saw defendant, he was carrying a cup in one hand and his other hand was in his pocket.  Defendant threw the cup and removed a large, unopened bottle of beer from the refrigerator located in the bar area.  Defendant did not pay for the beer nor did he approach any register located in the restaurant where he could have paid for the beer.  He was very angry and threatened employees as he left.

R.K. saw defendant walk toward the door as H.R. approached the restaurant from the left.  Defendant had the beer in his left hand, and his right hand was moving in his pocket.  R.K. did not know what defendant may have had in his right hand and did not see him remove a knife from his pocket.  When defendant went out the door, R.K. could see the left side of defendant's body but could only see his right hand when he raised it in front of him.  R.K. could not see what defendant may have been holding in his right hand, and she could not see his right side completely.

As R.K. watched from inside, she saw defendant argue with H.R. and then make a movement with his left hand as if to hit H.R. with the beer bottle.  Defendant threw the bottle at H.R. and ran off.  H.R. stepped back when defendant threw the bottle.  When defendant tried to hit H.R., R.K. saw someone swing a stick at defendant.  She only saw defendant try to hit H.R. one time.

H.R. owned and managed multiple businesses and properties, was licensed as a private investigator, and had previously worked as a New Hampshire State Trooper.  The restaurant operated on one of H.R.'s properties.  On the day of the instant offense, R.K.

---

**6**     The trial court admonished the jury to consider R.K.'s statements to H.R. only to explain H.R.'s state of mind and why he took certain actions.

called H.R. to advise him that an individual in the restaurant was causing havoc and trouble and threatening the employees "again."[7]  H.R. knew R.K. was referring to defendant based upon his knowledge of earlier incidents at the restaurant.

During an earlier incident in February or March of 2019 (the first incident), H.R. received a call from R.K. as he traveled from Los Angeles.  R.K. told H.R. that an individual was in the restaurant threatening to kill her father, "busting up the place," and breaking and throwing wine bottles.[8]  During the call, H.R. heard someone say, "I am going to kill you.  Come on outdoors.  I am going to get you.  Come on.  I am going to kill you."  H.R. visited the restaurant the following day and saw busted glass bottles on the bar and tables and red wine splattered on the walls, floor, and tablecloths.  An individual at the restaurant also showed H.R. a video of what happened the day before.[9] The video showed defendant in the restaurant screaming threats and racial slurs and smashing bottles.

Between the fall of 2018 and spring of 2019, H.R. contacted defendant on the property five or six times because he created disturbances.[10]  H.R. asked defendant to leave the property because no loitering, trespassing, or panhandling was permitted. Defendant did not threaten H.R. during these encounters.  On the prior occasions when

---

[7]    The trial court admonished the jury that R.K.'s statements to H.R. were not to be used for the truth of the matter asserted but to explain H.R.'s state of mind and subsequent conduct.

[8]    At defense counsel's request, the trial court again instructed the jury that this testimony was for the limited purpose of explaining H.R.'s state of mind during the April 12, 2019 incident based upon the first incident.

[9]    The trial court admonished the jury that evidence as to what anyone told H.R. was not being offered for its truth but could only be used for the limited purpose of explaining H.R.'s state of mind.

[10]    The trial court admonished the jury that evidence of these other incidents was only offered to explain H.R.'s state of mind and could not be used to prove the instant offense.

H.R. asked defendant to leave the premises, H.R. did not have a weapon and the interactions were peaceful.

When R.K. called to say that "he" was back, H.R. knew R.K. was referring to defendant. H.R. heard defendant threaten to kill R.K.'s father during the first incident and viewed a video of the incident. H.R. also knew that defendant had thrown bottles in the restaurant and had threatened to kill. Based upon his prior experience with defendant, H.R. believed that defendant was extremely dangerous and, because he had not been arrested previously due to slow police response, H.R. intended to detain defendant using handcuffs until police arrived. H.R. called one of his workers, S.H., and asked him to come to the restaurant and assist.

H.R. drove to the restaurant, parked in front of an adjacent business, and got out of his truck. He walked toward the restaurant and saw defendant standing and turning in the doorway as if to leave. When defendant left the restaurant, he was carrying a large, glass beer bottle approximately 12 to 14 inches tall in one hand and a shiny object in the other. Defendant swung open the door with his right hand and walked through. H.R. instructed defendant to get down on the ground and drop whatever he had in his hands, then advised him that H.R. intended to arrest and handcuff defendant. H.R. did not have a weapon.

When H.R. arrived and saw defendant bring the beer outside the restaurant, he immediately thought that defendant had stolen the beer, although no one had told him so.[11] This was one of the reasons that H.R. attempted to arrest defendant.

Defendant responded by stepping forward and using his right hand to swing at H.R., which caused H.R. to tip his head and fall backwards. H.R. backed into S.H. who was standing behind him. S.H. swung at defendant using a stick and, at the same time, defendant threw the beer bottle hard and fast at H.R.'s head while looking straight at him.

---

[11]    The trial court admonished the jury to consider H.R.'s belief only with reference to H.R.'s state of mind and his conduct based upon his state of mind.

The beer bottle came close enough to H.R.'s head that he could hear the sound of it passing before it hit the ground and broke. H.R. was within five feet of defendant when this happened. H.R. had reached for defendant just prior and was approximately 14 inches from defendant's arm when defendant swung at him. When defendant swung his hand at H.R., he used a round-house motion and his hand moved in sideways toward H.R.'s neck and face. Defendant's hand was closed, facing downwards, and contained something shiny that was chrome or silver that resembled a table utensil such as a knife, fork, or spoon. The weapon came within six inches of H.R.'s head, and he would have been struck if he had not moved backwards.

While the bottle was in the air, defendant ran from the parking lot. H.R. chased defendant but stopped to relay defendant's description to responding officers.

S.H. worked for H.R. as a shop supervisor and welder at the time of the instant offense. He also assisted in performing maintenance at the plaza where the restaurant was located. On the day of the instant offense, S.H received a call from H.R. who advised him to respond to the restaurant because an individual who had previously caused the restaurant problems was causing problems again.[12] S.H. responded right away and saw H.R. approaching the front door of the restaurant. Just as H.R. reached for the door, S.H. saw defendant come out of the restaurant with the beer bottle in one hand and a knife or screwdriver in the other. S.H. believed defendant was holding a knife, which he told the police later that day. H.R. put up a hand and instructed defendant to stop and drop the items. Defendant then lunged at H.R. with the knife as if to stab H.R. and said, " 'Fuck you.' " The knife would have hit H.R., but H.R. backed up and fell against S.H. who then swung at defendant to defend H.R. and himself. S.H. believed that defendant was going to hit H.R. and himself. S.H. used a wooden stick from a

---

**12** The trial court instructed the jury to limit use of H.R.'s statements to S.H. to explain what S.H. did in response to the statements.

"windshield cleaning brush" when he swung at defendant, but S.H. did not hit defendant. As S.H. swung the stick, defendant threw the beer bottle at them, which smashed against the storefront and barely missed H.R.'s head.

S.H. testified that the knife had a black handle with a four- to six-inch shiny, silver blade. On cross-examination, S.H. agreed that he had previously testified that he was not certain if the weapon was a knife or a screwdriver and that all he saw was "a shiny thing." When defendant tried to stab H.R., the blade was "[p]retty close" to H.R.'s arm and chest area. S.H. tried to chase defendant, but defendant got away over a brick wall. S.H. was familiar with defendant from five or six prior incidents when defendant loitered at the plaza and was removed from the property. He also viewed the video of the first incident of defendant causing problems at the restaurant. On cross-examination, S.H. admitted that he had been previously convicted of two violations of Vehicle Code section 10851, subdivision (a) in 2010 and a violation of section 460, subdivision (b) in 2016.

## DISCUSSION

**I.     *The trial court did not abuse its discretion in admitting evidence of defendant's prior bad conduct at the restaurant to establish the lawfulness of H.R.'s citizen's arrest.***

### A.     Background

#### 1.     *Hearing Pursuant to Evidence Code Section 402*

On September 9, 2020, defendant orally moved for a hearing relating to testimony proffered by the prosecutor from H.R. as to hearsay statements relayed to H.R. on the day of the incident and prior incidents involving defendant that related to H.R.'s state of mind.[13]  H.R. testified.

---

[13]     Defense counsel did not state any objection to the evidence on the record. Defendant argues that if defense counsel failed to properly object to this evidence, then counsel was

H.R.'s testimony as to the instant offense and the first incident was substantially the same as that recounted above during his trial testimony, and we will provide only an abbreviated version to avoid unnecessary duplication. On the day of the instant offense, R.K. called H.R. and told him that defendant was inside the restaurant and causing trouble by threatening her dad and stealing beer. She described defendant as the same individual who had previously harassed people in the restaurant. H.R. testified that only one individual had been involved in such incidents at the restaurant, so he knew R.K. was referring to defendant.

H.R. testified as to the first incident. He also described a second incident involving defendant that occurred between the first incident and the instant offense. Regarding the second incident, H.R. received a call from the restaurant owner who advised him that defendant had entered the restaurant through the back door, obtained a knife from the kitchen, and demanded money. When the owner refused, defendant yelled, left through the back door, and used the knife to stab all the tires on vehicles parked nearby. The owner used both the first and second incidents as examples of why full-time security should be provided at the property.

H.R. also recognized defendant from approximately four contacts with him between September 2018 and the first incident. During these earlier encounters, H.R. asked defendant to leave the property because he was loitering and panhandling.

When H.R. received R.K.'s call on the day of the instant offense, H.R. knew the individual in the restaurant was defendant and that defendant had not been arrested for the two prior incidents because of police response times. H.R. intended to detain defendant with handcuffs until the police arrived. When H.R. arrived at the restaurant, he recognized defendant as defendant left the restaurant.

constitutionally ineffective. The People do not argue defendant forfeited his objections to the evidence, so we will reach the merits.

## 2. *The Trial Court's Ruling*

The trial court tentatively ruled that it would admit some of the evidence because it was probative of H.R.'s state of mind during the events of the instant offense and his ability to identify defendant as the individual R.K. saw causing problems in the restaurant that day. The trial court later advised that the evidence was admissible "to establish the state of mind as to why [H.R.] would have felt that there was good cause to conduct a citizen's arrest." The trial court concluded that it would be probative and not unduly prejudicial under Evidence Code section 352 for H.R. to testify as to the first incident and his viewing of the video of that incident.

After additional evidence, the trial court reaffirmed its tentative ruling and held that the evidence was probative to show H.R.'s state of mind in approaching defendant to detain him as part of a citizen's arrest. The trial court excluded testimony regarding statements made by customers in the background of H.R.'s call with R.K during the first incident. The trial court also ruled that H.R. could testify as to his other contacts with defendant but not the second incident involving the slashed tires. The trial court explained, "I think that's relevant in terms of [H.R.] being familiar with [defendant's] face and having seen [defendant] there." As to the instant offense, the trial court ruled that H.R. could testify as to what he was told that caused him to respond to the restaurant.

Defense counsel requested that the court exclude defendant's statements from the video of the first incident because H.R. was not familiar with defendant's voice. The trial court then confirmed its tentative decision and found "a sufficient foundation laid for [H.R.] to testify as to … his state of mind." The trial court also agreed to admonish the jury that the evidence could only be used to explain H.R.'s state of mind in attempting to detain defendant during the instant offense. The trial court explained to H.R. the limitations on his testimony.

The trial court instructed the jury as to the limited admissibility of this evidence approximately eight times during the trial. (See *ante*, fns. 5–12.) Additionally, prior to

10.

closing arguments, the trial court instructed the jury: "During the trial certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other."

## B. Applicable Law and Standard of Review

Defendant argues that the trial court erred in admitting evidence of the first incident because it was not relevant to whether H.R.'s attempted citizen's arrest of defendant was lawful. Defendant also argues that, even if marginally relevant, the probative value of the incident was substantially outweighed by the danger of undue prejudice. We review the trial court's evidentiary rulings for an abuse of discretion. (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 405 (*Bryant*).)

### 1. Evidence of Other Acts Pursuant to Evidence Code Section 1101

"The general framework for the admission of evidence as it relates to defendant's challenge is as follows. Only relevant evidence is admissible. (Evid. Code, § 350.) Relevant evidence is broadly defined as that having a 'tendency in reason to prove or disprove any disputed fact that is of consequence' to resolving the case. (Evid. Code, § 210.) Inferences drawn from the evidence must be logical and reasonable, not merely speculative. [Citations.] All relevant evidence is admissible, unless a specific statutory or constitutional provision bars its admission. (Evid. Code, § 351; Cal. Const., art. I, § 24.) If evidence is relevant and admissible for one purpose, but inadmissible if considered for another purpose, the trial court must admit it but, upon request, limit its proper scope and so instruct the jury. (Evid. Code, § 355.)

"[Evidence Code] [s]ection 1101[, subdivision ](a) prohibits the admission of character evidence if offered to prove conduct in conformity with that character trait, sometimes described as a propensity to act in a certain way." (*Bryant*, *supra*, 60 Cal.4th at pp. 405–406.) "[Evidence Code] [s]ection 1101[, subdivision ](b) provides for the admission of uncharged acts when relevant to prove some other disputed fact." (*Id.* at

p. 406.) "If an uncharged act is relevant to prove some fact other than propensity, the evidence is admissible, subject to a limiting instruction upon request." (*Ibid.*)

### 2. *Balancing Probative Value Versus Prejudice (Evid. Code, § 352)*

"Even if uncharged acts evidence is otherwise admissible, an accused may still urge that [Evidence Code] section 352 should bar it from consideration. In the face of a timely objection (Evid. Code, § 353, subd. (a)), relevant evidence may still be excluded if its probative value is substantially outweighed by the probability that its admission will require undue time consumption, will confuse or mislead the jury, or poses a substantial risk of undue prejudice." (*Bryant*, *supra*, 60 Cal.4th at pp. 406–407, fn. omitted.)

" ' " ' "Prejudice" as contemplated by [Evidence Code] section 352 is not so sweeping as to include any evidence the opponent finds inconvenient. Evidence is not prejudicial, as that term is used in a[n] [Evidence Code] section 352 context, merely because it undermines the opponent's position or shores up that of the proponent. The ability to do so is what makes evidence relevant. The code speaks in terms of *undue* prejudice. Unless the dangers of undue prejudice, confusion, or time consumption " 'substantially outweigh' " the probative value of relevant evidence, a[n] [Evidence Code] section 352 objection should fail. [Citation.] " 'The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying [Evidence Code] section 352, "prejudicial" is not synonymous with "damaging." ' [Citation.]" [Citation.] [¶] The prejudice that [Evidence Code] section 352 " 'is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence.' [Citations.] 'Rather, the statute uses the word in its etymological sense of "prejudging" a person or cause on the basis of extraneous factors.' " ' " ' " (*Bryant*, *supra*, 60 Cal.4th at p. 408, second–fifth seventh, & eleventh bracketed insertions added.)

12.

## C.    Analysis

Defendant argues that the trial court erred in admitting evidence of the first incident because H.R.'s state of mind was not relevant to whether H.R.'s attempted citizen's arrest of defendant was lawful.  We disagree because H.R.'s state of mind was relevant to both the issue of whether he was effectuating a citizen's arrest and whether his attempt to handcuff defendant was a reasonable use of force such that defendant could not defend against it.

### 1.    *H.R.'s State of Mind Was Relevant to the Validity of His Attempted Citizen's Arrest*

The authority of a citizen to arrest another person is contained in section 837: "A private person may arrest another:  1. For a public offense committed or attempted in his presence.  [¶]  2. When the person arrested has committed a felony, although not in his presence.  [¶]  3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it."[14]

---

[14]    By the time the People rested their case and the trial court instructed the jury, the prosecution was apparently relying upon section 837, subdivision (1) as authority for the citizen's arrest, which includes misdemeanor offenses such as petty theft.  The record, however, fails to reflect whether this was the prosecution's theory or the basis for the trial court's relevancy ruling during the Evidence Code section 402 hearing before the trial began.  At trial, the first prosecution witnesses testified that defendant made criminal threats (a felony pursuant to § 422, subd. (a)).  H.R. could have lawfully arrested defendant for that felony, although not committed in his presence, if he had reasonable cause to believe that defendant committed it. (§ 837, subd. (3).)  Because R.K. used the earlier incidents to communicate to H.R. that defendant was threatening the employees, evidence of the first incident would have been probative to establish H.R.'s reasonable cause to believe defendant committed the instant offense and to prove the lawfulness of the citizen's arrest.  However, the trial court struck the witness's testimony before it was complete because the witness, in violation of the court's order excluding it as unduly prejudicial, testified that defendant threatened her with a knife.  Once the trial court struck that testimony, the prosecution could not prove a felony violation of section 422 to establish the lawfulness of H.R.'s attempted citizen's arrest and could only rely upon petty theft to support the arrest.  The trial court was not asked to revisit its ruling admitting evidence of the second incident after the testimony was stricken.  While a felony violation of section 422 and section 837, subdivision (3) could have supported the trial court's relevancy ruling, the parties and trial court did not discuss the first incident with reference to H.R.'s state of mind as to any particular subdivision of section 837.  Therefore, we shall proceed as the parties do, assuming the

The term "public offense" includes misdemeanors. (§ 16). " 'Presence' is not mere physical proximity but is determined by whether the offense is apparent to the officer's [or citizen's] senses [citations]. We hold that the term 'in his presence' in section 837 of the Penal Code must be similarly construed. Accordingly, since [the arresting citizen] saw [the defendant] prowling in the neighborhood, the offense was committed *in her presence*." (*People v. Sjosten* (1968) 262 Cal.App.2d 539, 543–544.)

Further, "[t]he person arrested may be subjected to such restraint as is reasonable for his arrest and detention." (§ 835.) A person who makes a citizen's arrest may use reasonable force to detain the arrestee and the arrestee has a duty not to resist the use of reasonable force to effect the arrest. (*People v. Fosselman* (1983) 33 Cal.3d 572, 579.) The arrestee has no right of self-defense against such force but may defend against the use of excessive force in making the arrest as an application of the law of self-defense. (*People v. Adams* (2009) 176 Cal.App.4th 946, 952–953.)

Unlike a warrantless arrest made by a police officer, a private citizen may not arrest a defendant based upon mere probable cause to believe that a crime was committed in his presence. (Compare § 836, subd. (a) with § 837, subd. (1).) Prior to 1957, however, the two statutes were coextensive and each authorized arrest "for a 'public offense committed or attempted in his presence.' " (*Cervantez v. J. C. Penney Co.* (1979) 24 Cal.3d 579, 590–591, fn. 4 (*Cervantez*), superseded by statute on other grounds as stated in *Melendez v. City of Los Angeles* (1998) 63 Cal.App.4th 1, 6–7.) In 1952, our Supreme Court interpreted such language in section 836 as authorizing a peace officer to arrest when he has probable cause to believe a misdemeanor is being committed in his presence. (*Coverstone v. Davies* (1952) 38 Cal.2d 315, 320–321.) In view of the identical language employed in section 837, subdivision (1) and applicable to citizen's

---

trial court ruled that H.R.'s state of mind was relevant only to establish the lawfulness of H.R.'s citizen's arrest pursuant to section 837, subdivision (1).

arrests, one court concluded that "a private citizen may arrest another when circumstances exist which would cause a reasonable person to believe a crime had been committed in his presence." (*People v. Burgess* (1959) 170 Cal.App.2d 36, 40–41.)

However, the Legislature's decision to amend section 836 in 1957 to authorize a peace officer to make a warrantless arrest " 'whenever he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence,' " without similarly amending section 837, "indicat[es] an intent to distinguish between the authority of a peace officer and of a private citizen to arrest for a misdemeanor." (*Cervantez, supra*, 24 Cal.3d at pp. 590–591, fn. 4.) Therefore, the lawfulness of a private citizen's actions in arresting an individual is dependent upon a jury finding that the defendant actually committed an offense in the private citizen's presence and not just that the citizen had probable cause to believe the individual did so. (See *id*. at p. 591 [finding error in trial court's instruction that an off-duty officer's actions in arresting someone was lawful if the off-duty officer (possessing only the authority of a private citizen) had probable cause to believe that an offense was committed in his presence].)

While the lawfulness of a citizen's arrest is ultimately a question of whether the defendant actually committed the crime for which he was arrested, the arresting citizen's state of mind is still relevant. Both defendant and the People have relied upon *Gomez v. Garcia* (1980) 112 Cal.App.3d 392 in their arguments, but we do not believe that this case is applicable when construing section 837. In that case, the court concluded that the citizen's state of mind is relevant to whether the arrest was lawful and held, "Where the validity of the arrest turns on whether that conduct constitutes a public offense, the test to be applied must be one of whether the person making the arrest had a reasonable [and] good faith belief that it did." (*Gomez*, at p. 397.) However, *Gomez* relied upon *Coverstone v. Davies*, *supra*, 38 Cal.2d 315, which interpreted section 836 and which, as

15.

explained in *Cervantez,* is not applicable to a private citizen's arrest pursuant to section 837. (*Cervantez, supra*, 24 Cal.3d at p. 591.)

The law that we have discussed is clear that the lawfulness of H.R.'s citizen's arrest is dependent upon whether, in fact, defendant committed a crime in H.R.'s presence. If defendant committed a crime in H.R.'s presence, then defendant had no right to defend against H.R.'s attempts to touch defendant and forcibly handcuff him if H.R. was making a lawful citizen's arrest and was using reasonable force to restrain defendant. If H.R. was not attempting to arrest defendant or was not aware of the facts that proved defendant was committing a crime, the fact that defendant actually committed a crime in H.R.'s presence would not justify H.R.'s actions in attempting to restrain defendant with handcuffs and would not affect defendant's right to legally defend himself. Therefore, H.R.'s state of mind, that is, whether H.R. intended to arrest defendant and the facts known to H.R. that established defendant committed a crime in his presence, was a necessary foundation for establishing H.R.'s right to use reasonable force to restrain defendant. The jury was instructed: "A private person is making a lawful citizen's arrest *if he acted because* the person arrested committed or attempted to commit petty theft, in violation of Penal Code Section 484, in the private person's presence." (Italics added.)

Our conclusion is supported by *People v. Aldapa* (1971) 17 Cal.App.3d 184. In that case, officers acting outside of their jurisdiction arrested the defendant based upon information learned from four informants that the defendant was distributing drugs. (*Id.* at p. 186.) At that time, the city officers required the permission of the sheriff to make arrests outside of city limits, and they did not have such permission. (*Id.* at p. 187.) Therefore, the city officers' authority to arrest was determined by section 837 and limited to that of a private citizen in the same circumstances. (*Aldapa*, at p. 188.) In construing section 837, subdivision (3), the court stated, "For there to be a valid arrest by a private citizen under Penal Code section 837, subdivision (3), the requirement that there in fact

16.

be a felony committed can only be met if there is evidence of the corpus delicti and *it is an offense known by the arresting party to have been committed*." (*Aldapa*, at p. 188, italics added; see *People v. Piorkowski* (1974) 41 Cal.App.3d 324, 328.)

As the jury was instructed, the crime of petty theft requires proof that defendant took property of the restaurant without consent, intended to deprive the owner of it permanently, and moved the property and kept it for any period of time. (See § 484; CALCRIM No. 1800.) H.R. testified that he arrested defendant, in part, because defendant left the restaurant with an unopened beer that H.R. believed defendant had taken without consent.[15] Evidence of the first incident was probative to explain how H.R. knew that defendant took the beer with the intent to deprive the restaurant of its property during the instant offense because defendant had also done so during the first incident. " ' "We have long recognized 'that if a person acts similarly in similar situations, he probably harbors the same intent in each instance' .… The inference to be drawn is not that the actor is *disposed* to commit such acts; instead, the inference to be drawn is that, in light of the first event, the actor, at the time of the second event, must have had the intent attributed to him by the prosecution." ' " (*People v. Roldan* (2005) 35 Cal.4th 646, 706, overruled on other grounds as stated in *People v. Doolin* (2009) 45 Cal.4th 390, 421, & fn. 22; see Evid. Code, § 1101, subd. (b) [evidence that a person committed a crime, civil wrong, or other act is admissible when relevant to prove intent, knowledge, or absence of mistake or accident].)

In addition, R.K. told H.R. that an individual was causing trouble, threatening employees, and stealing beer on the day of the instant offense and described the

---

**15**  Defendant suggests in his reply brief that under the facts of this case, his crime did not occur in H.R.'s presence as a matter of law. We disagree. H.R. was at the door of the restaurant as defendant took the beer when leaving the restaurant. Based upon H.R.'s physical proximity and his own senses, the jury could conclude that defendant completed the theft in H.R.'s presence. (See *People v. Sjosten*, *supra*, 262 Cal.App.2d at pp. 543–544.)

17.

individual as the same individual who had done so previously. Evidence of the first incident was, therefore, also probative to explain how H.R. identified defendant as the individual in the restaurant causing trouble when defendant left the restaurant, as opposed to a customer who lawfully purchased beer. (See Evid. Code, § 1101, subd. (b) [evidence that a person committed a crime, civil wrong, or other act is admissible when relevant to prove identity].)

R.K.'s description of defendant's behavior in the restaurant also supported H.R.'s conclusion that defendant's conduct in the restaurant made it unlikely that he would have purchased the beer or been given the beer by an employee before leaving the restaurant.

Furthermore, evidence as to the first incident was relevant to the jury's determination of whether H.R. used reasonable force to detain defendant. A person who makes a citizen's arrest may use reasonable force to detain the arrestee, and the arrestee has a duty not to resist the use of reasonable force to effect the arrest. (*People v. Fosselman*, *supra*, 33 Cal.3d at p. 579.) Therefore, H.R.'s knowledge of defendant's past and present conduct at the restaurant is probative of the reasonable amount of force H.R. could have used to restrain or arrest defendant and in assessing H.R.'s use of handcuffs to detain defendant.

### 2. The Trial Court Did Not Abuse Its Discretion in Concluding that the Evidence Was More Probative than Prejudicial

Defendant argues the trial court should have excluded evidence of the first incident because it was unduly prejudicial. We disagree. We review this claim solely for abuse of discretion. (*People v. Kipp* (1998) 18 Cal.4th 349, 371.) We find none.

The court's ruling was not an abuse of discretion pursuant to Evidence Code section 352. Defendant bases his argument to the contrary mainly on his contention that the incident did not help prove an element of the crime in this case. As we have discussed, that view is incorrect. The evidence of the first incident tended to prove that defendant did not take the beer by accident, that he intended to deprive the restaurant of

18.

its property, and that H.R.'s use of handcuffs to attempt to restrain defendant was not an unreasonable use of force. The first incident showed that defendant threw bottles, broke glass, and threatened harm to individuals. That defendant previously deprived the restaurant of its property tended to prove that defendant intended to do so during the instant offense when he removed the beer from the restaurant in H.R.'s presence. Thus, because H.R. knew that defendant had already done something similar, H.R. was entitled to believe it less likely that defendant paid for the beer.

" 'Under the abuse of discretion standard, "a trial court's ruling will not be disturbed, and reversal … is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*People v. Foster* (2010) 50 Cal.4th 1301, 1328–1329.) We are unable to conclude on this record that the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner. The trial court held a hearing outside the presence of the jury before trial commenced to determine the facts of the evidence of prior conduct offered. The trial court listened to H.R.'s testimony regarding first incident (that included defendant's conduct in taking and destroying drink bottles) and a second incident whereby defendant threatened the owner with a knife and then used the knife to slash tires. The trial court determined that evidence of the first incident could be introduced but excluded the second incident with the knife as unduly prejudicial given defendant's use of the weapon as charged in the instant offense. During the first incident, defendant did not possess a weapon and the conduct was not more egregious than the during the instant offense. The trial court also agreed to admonish the jury and did so approximately eight times during the course of testimony by instructing the jury to consider some testimony for limited purposes only. (See *ante*, fns. 5–12.)

Moreover, the limiting instructions the court read during testimony and before argument directed the jury not to consider the other crimes evidence for anything other

than evidence of H.R.'s state of mind. " 'We presume the jury followed these instructions.' " (*People v. Chhoun* (2021) 11 Cal.5th 1, 30.) Therefore, we conclude the trial court properly admitted the evidence of the first incident to show H.R.'s state of mind in effecting a citizen's arrest.[16]

## II. *The trial court did not abuse its discretion by denying defendant's request to strike his prior serious felony conviction.*

Defendant argues that the trial court abused its discretion in denying his request to strike his prior serious felony conviction pursuant to section 1385, subdivision (a) and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).[17] We reject defendant's argument as the trial court acted within its discretion when it denied defendant's request to strike his prior serious felony conviction.

### A. Background

The trial court found true that defendant had been convicted of carjacking in 2003 (§ 215, subd. (a)) and second degree robbery in 2013 (§ 212.5, subd. (c)). The probation officer's presentence report described defendant's lengthy criminal history comprised of three juvenile adjudications between 1996 and 1998 involving theft (defendant hit a victim and stole a bike, was in found in possession of a purse that had been stolen at gunpoint, and acted as a lookout while an accomplice robbed a victim of a cassette player).

---

[16] Because we find no error in the trial court's admission of the evidence, we need not address defendant's argument regarding whether or not its admission was harmless. Additionally, because the court did not abuse its discretion in admitting the evidence under state law, defendant's argument that admission of the evidence violated due process also fails. (See *People v. Fuiava* (2012) 53 Cal.4th 622, 670.)

[17] A defendant's request for this type of leniency is commonly referred to as a "*Romero* motion," although defendants do not actually have a right to make motions under section 1385. (*People v. Carmony* (2004) 33 Cal.4th 367, 375, 379 (*Carmony*).)

Defendant's prison records show that between 1999 and 2003, defendant was convicted of four misdemeanor crimes involving receiving stolen property, fighting, false identification to a police officer, taking a vehicle without consent, domestic violence, and second degree burglary. While on probation for those offenses, defendant was convicted of carjacking and was sentenced to a term of four years in prison in October 2003. Between 2007 and 2011, defendant was paroled and returned to prison approximately 11 times and absconded from parole two times until his parole was discharged in July 2011. He was also convicted of two misdemeanor drug offenses between 2010 and 2012.

Defendant was arrested on December 29, 2011, for second degree robbery and sentenced to four years in prison on September 17, 2013. Defendant was imprisoned in October 2013 and paroled in April 2017. Defendant was arrested in August 2018 for taking a vehicle without the owner's consent and sentenced to a three-year term of probation on April 3, 2019. Defendant absconded twice from parole between 2017 and 2019 and committed the instant offense on April 12, 2019, only nine days after being sentenced to probation.

The probation officer found one circumstance in mitigation—defendant was suffering from a mental health condition that significantly reduced his culpability for the crime. Circumstances in aggravation included: (1) defendant had engaged in violent conduct that indicated he was a serious danger to society; (2) defendant's prior convictions as an adult were numerous; (3) defendant served three prior prison terms; (4) defendant was on misdemeanor probation when the crime was committed; and (5) defendant's prior performance on juvenile probation, misdemeanor probation, felony probation, and parole were unsatisfactory as he violated terms and/or reoffended.

Defense counsel submitted a motion that invited the trial court to strike defendant's prior convictions pursuant to *Romero*, *supra*, 13 Cal.4th 497 and

section 1385. Counsel argued that (1) the convictions were remote in time, (2) the Three Strikes punishment is disproportionate to the offense, (3) defendant would still spend a substantial amount of time in custody, (4) defendant did not cause any physical harm or injury, and (5) defendant has a considerable history of mental illness.

Defense counsel further argued that defendant was paroled on April 12, 2017, and, although he suffered three parole revocations, apart from the instant charges, defendant had only been convicted of one misdemeanor offense since his discharge of parole on June 8, 2020.[18] Counsel also argued that defendant had a long history of mental illness (as documented by mental competency reports prepared earlier in the case). At sentencing, defense counsel argued that the offense could have been charged as a misdemeanor in light of the lack of injury to H.R. She also argued that defendant may not have understood that a private citizen could effectuate an arrest when he resisted and that defendant fled quickly thereafter rather than attacking H.R. after he fell to the ground.

The trial court noted that it must consider the nature and circumstances of defendant's prior felony convictions and the particulars of his background, character, and prospects when determining whether he may be deemed outside the spirit of the Three Strikes law. The court first noted that defendant "definitely" had a lengthy criminal history that included three juvenile convictions commencing in 1996.

The court characterized defendant's 2000 burglary conviction, 2003 domestic violence conviction, 2003 carjacking felony conviction, numerous parole violations, and 2004 battery conviction as involving "violent behavior." Defendant committed drug offenses after his release from prison and then committed his second strike conviction in

---

[18] We note that defendant was in custody on these charges from May 9, 2019, through October 21, 2020.

2011 that resulted in a prison commitment "and was still on parole from that commitment at the time of the offense in this case."

The trial court noted that "there has not been any substantial period of time where [] defendant has shown that he has made any progress to rehabilitating himself, toward becoming a productive member of our community, toward having the type of character and prospects that would lead him to a law-abiding life." Regarding the instant offense, the trial court recognized the seriousness of the offense, that H.R. narrowly escaped serious injury from the stabbing instrument, and that defendant's use of force was "totally unnecessary," even if defendant felt he needed to defend himself, because the H.R.'s conduct did not threaten deadly force. The trial court exercised its discretion to deny defendant's request to strike his prior convictions.

## B.     Applicable Law and Standard of Review

Section 1385 grants trial courts discretion to dismiss a prior strike conviction if the dismissal is in furtherance of justice. (§ 1385, subd. (a); *Romero*, *supra*, 13 Cal.4th at pp. 504, 529–530.) " '… A court's discretion to strike [or vacate] prior felony conviction allegations [or findings] in furtherance of justice is limited. Its exercise must proceed in strict compliance with … section 1385[, subdivision ](a) .…' " (*People v. Williams* (1998) 17 Cal.4th 148, 158, third bracketed insertion added (*Williams*).) The Three Strikes law "was intended to restrict courts' discretion in sentencing repeat offenders." (*Romero*, at p. 528; accord, *People v. Garcia* (1999) 20 Cal.4th 490, 501 ["a primary purpose of the Three Strikes law was to restrict judicial discretion"].)

The Three Strikes law establishes " 'a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike,' " unless the sentencing court finds a reason for making an exception to this rule. (*Carmony*, *supra*, 33 Cal.4th at p. 377.) There are "stringent standards that sentencing courts must follow in order to find such an exception." (*Ibid*.) In order to dismiss a prior strike conviction, "the court in

23.

question must consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams*, *supra*, 17 Cal.4th at p. 161.)

A trial court's decision not to dismiss a prior strike conviction is reviewed under the deferential abuse of discretion standard. (*Carmony*, *supra*, 33 Cal.4th at p. 374.) The Three Strikes law establishes that not striking a prior serious felony conviction is the norm, and there is a "strong presumption that any sentence that conforms to the[] sentencing norm[] is both rational and proper." (*Carmony*, at p. 378.) An abuse of discretion is established by demonstrating that the trial court's decision was "irrational or arbitrary. It is not enough to show that reasonable people might disagree about whether to strike one or more of his prior convictions." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.) "Where the record is silent [citation], or '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law,' " we are required to affirm the trial court's ruling, " 'even if we might have ruled differently in the first instance.' " (*Carmony*, at p. 378, first bracketed insertion added.)

### C.    Analysis

We conclude that defendant has failed to establish that the trial court's denial of defendant's request to strike his prior serious felony conviction was outside the bounds of reason under the facts and the law. We may not find an abuse of discretion unless the decision was so irrational or arbitrary that no reasonable person could agree with it. And here, it was not.

24.

At sentencing, the trial court stated that it had reviewed the motion and applicable legal authority. The trial court found that defendant did not fall outside the spirit of the Three Strikes law because defendant "definitely" had a lengthy criminal history that included three juvenile convictions commencing in 1996 and convictions evidencing "violent behavior," such as burglary and domestic violence, before his first violent felony conviction for carjacking. Defendant was still on parole for his second violent felony conviction for second degree robbery when he committed the instant offense. The trial court noted that defendant had no substantial period of time wherein he failed to commit criminal offense and had shown no progress toward leading a law-abiding life. Regarding the instant offense, the trial court recognized the seriousness of the offense, that H.R. narrowly escaped serious injury from the stabbing instrument, and that defendant's use of force was excessive, even if he felt he needed to defend himself, because H.R.'s conduct did not threaten deadly force.

The trial court's discussion of proper considerations, along with the presumption that denial of a *Romero* motion is a proper exercise of discretion (*Carmony*, *supra*, 33 Cal.4th at p. 378), support our conclusion that the trial court's denial of defendant's motion was not an abuse of discretion. The trial court's decision was not "so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.) As we explain below, defendant's arguments do not persuade us.

Defendant first contends the trial court abused its discretion in denying his *Romero* motion as he falls outside the spirit of the Three Strikes law because no one was physically injured during the instant offense. He also argues that H.R. unjustifiably provoked defendant in trying to arrest him. He argues this mitigates his conduct and that he is not within the Three Strikes law even with his extensive criminal record. However, "the Three Strikes law was devised for the 'revolving door' career criminal, and was expressly intended 'to ensure longer prison sentences … for those who commit a felony'

25.

as long as they were previously convicted of at least one strike." (*People v. Strong* (2001) 87 Cal.App.4th 328, 331–332, fns. omitted.) As the trial court recognized, defendant's criminal history began when he was still a juvenile and continued with increasing seriousness and without any significant gaps in time until he committed the instant offense at 40 years old. Based upon defendant's history, the trial court noted defendant did not have any substantial period of time where he showed he was rehabilitating himself. The trial court correctly recognized that defendant did not fall outside the spirit of the Three Strikes law.

Defendant argues that the trial court abused its discretion because, referring to the nature and circumstances of the offense, H.R. was not injured. Defendant also challenges whether H.R.'s attempted arrest was lawful. As we have previously concluded, however, defendant completed his theft of the beer in H.R.'s presence and, therefore, the citizen's arrest was lawful. In addition, the trial court heard the evidence and concluded that H.R. narrowly escaped a serious injury from defendant's stabbing attempt. The trial court further noted that defendant's use of force was totally unnecessary because H.R. did not pose a threat to defendant and the lack of injury, while fortuitous, was not due to defendant's lack of trying to hurt H.R.

Defendant also argues that the trial court failed to consider the lengthy sentences it could have imposed if it dismissed one or more of his strikes, relying upon *People v. Garcia*, *supra*, 20 Cal.4th 490. However, the trial court in *Garcia* dismissed the defendant's strikes because his "prior convictions all arose from a single period of aberrant behavior for which he served a single prison term" and "his criminal history does not include any actual violence." (*Id.* at p. 503.) Defendant's criminal record includes violent crimes that spanned decades.

Defendant also suggests that the trial court was "blinded by the defendant's prior convictions" and that "[n]o valid penological purpose would be served in this case by

26.

imposing a sentence of 35 years to life when sentences up to 14 and 18 years were available," relying on *People v. Bishop* (1997) 56 Cal.App.4th 1245, 1250–1251. First, *Bishop*, in deferentially reviewing the trial court's act of striking two of the defendant's prior strike convictions, upheld that exercise of discretion. Here, we deferentially review the court's denial of defendant's motion to strike his prior strike conviction. The court considered the proper criteria in ruling on defendant's motion, and we may not substitute our own judgment. (*Carmony*, *supra*, 33 Cal.4th at p. 377.) Second, *Bishop* predates *Williams*, *supra*, 17 Cal.4th 148, and consequently did not apply the appropriate standard: whether the defendant should be deemed to fall outside the scheme's spirit.

The court here applied the correct standard and its denial of the motion was not "so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, *supra*, 33 Cal.4th at p. 377.) Defendant also argues his homelessness caused him to be in situations where it was necessary for him to use force and he suffered from mental illness, supporting a finding that defendant is outside the spirit of Three Strikes law. However, defendant has not presented affirmative evidence that his case was so "extraordinary" as to require the dismissal of his prior strike, or that the trial court's decision not to dismiss his prior strike was irrational or arbitrary even in light of these circumstances. (See *Carmony*, at pp. 378–379.)

Even if reasonable minds could differ about whether to strike a prior conviction in this case, this would not establish an abuse of discretion. (*Carmony*, *supra*, 33 Cal.4th at pp. 376–378.) In fact, only where the relevant factors manifestly support the striking of a prior conviction and no reasonable mind could differ would the failure to do so constitute an abuse of discretion. (*Id*. at p. 378.) This is not such a case.

Defendant has failed to show that the trial court was either unaware of its discretion or considered impermissible factors. We cannot say that its ruling was irrational or arbitrary such that no reasonable person could agree with it. The record

shows that the trial court considered defendant's arguments as well as his criminal history and his conduct in the instant offense in declining to strike his prior serious felony conviction. On the record before us, the trial court did not abuse its discretion in deciding that the prior serious felony conviction and the instant offense fell within the spirit of the Three Strikes law.

## DISPOSITION

The clerk of the superior court shall prepare an amended abstract of judgement correcting section 1 to show that defendant was convicted by jury and not by plea and section 8 by checking the box that defendant was sentenced pursuant to Penal Code section 667, subdivisions (b)–(i) and forward it to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.


HILL, P. J.

WE CONCUR:


POOCHIGIAN, J.


DETJEN, J.

28.